UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONALD EBERHARDT,

        Plaintiff,

v.                                CASE No. 8:08-CV-1714-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and no reversible error has been identified, the decision shall be affirmed.

I.

The plaintiff, who was thirty years old at the time of the administrative hearings and who has a tenth-grade education, has been

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

employed primarily as a lawn service worker and a laborer (Tr. 118, 491). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to neck and back injuries, a post traumatic stress disorder, and a hearing problem (Tr. 117). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge (Tr. 489, 530). After the plaintiff testified, the law judge continued the hearing in order to obtain consultative examinations (Tr. 528-29). At the supplemental hearing, the law judge heard testimony from a vocational expert and a psychological expert, Dr. Michael Eastridge (Tr. 532).

The law judge found that the plaintiff has severe impairments consisting of "spondylotic changes with small disc bulging C3-4, C6-7; minimal disc bulge L4-S1; possible minimal hearing reduction; depression; personality disorder (with antisocial and compulsive features); nicotine abuse; and substance abuse (cannabis dependence)" (Tr. 25). In light of these impairments, the law judge concluded (id.):

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds repeatedly; sit and/or stand at-will;

occasionally stoop; never squat, kneel or crawl; never reach above shoulders; occasionally climb stairs; never climb ropes, ladders, scaffolds; [and is] limited to simple work and only occasional contact with the public.

The law judge determined further that these restrictions prevented the plaintiff from returning to past work (Tr. 30). However, based upon the testimony of a vocational expert, the law judge found that there were jobs in significant numbers in the national economy that the plaintiff could perform, such as electronics worker and small products assembler (Tr. 31, 545). The law judge therefore decided that the plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The plaintiff must also show that he became disabled before his insured status expired on June 30, 2001, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The law judge found that the plaintiff suffers from a combination of severe impairments that substantially limit his functional capacity, but that they are not disabling. The plaintiff challenges the finding of not disabled on two grounds.

-5-

A. The plaintiff first argues that the law judge "failed to fully develop the record by not re-contacting consultative examiner Dr. Arthur Pasach....regarding the residual physical capacity form he completed" (Doc. 17, p. 6). Specifically, the plaintiff argues that Dr. Pasach should be recontacted to inquire whether his "opinion was based solely on the claimant's complaints, or whether his opinion was based on a combination of medical history, objective findings, clinical examination, etc." (id., p. 8). This contention is unpersuasive. Regardless of what Dr. Pasach might say if recontacted, it would make no difference in the law judge's determination to discount Dr. Pasach's opinion. Thus, the law judge reasonably explained that he gave minimal weight to Dr. Pasach's opinion both because it was not supported by objective findings and because it appeared to be based on the plaintiff's subjective complaints, which the law judge found to be not fully credible (Tr. 29).

Dr. Pasach, a one-time examining physician, opined in a Medical Source Statement of Ability to Do Work-Related Activities (Physical) that the plaintiff was essentially disabled from working (Tr. 444-47). Thus, he opined pertinently that, due to cervical myelopathy, the plaintiff could stand and/or walk for less than two hours in an eight-hour workday, and could sit less than

six hours in an eight-hour workday (Tr. 444-45). As indicated, the law judge gave minimal weight to this opinion (Tr. 29).

The plaintiff points out that the law judge has a basic duty to develop a full and fair record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). However, the basic principle for recontacting a physician is that the evidence that has been received is inadequate for a disability determination. 20 C.F.R. 404.1512(e), 416.912(e); Johnson v. Barnhart, 138 Fed. Appx. 186, 189 (11th Cir. 2005)(unpub. dec.). Generally, it is only necessary to recontact a physician if there are gaps in the record. See Gallina v. Commissioner of Social Security, 202 Fed. Appx. 387, 389 (11th Cir. 2006)(unpub. dec.); Johnson v. Barnhart, supra. Moreover, the plaintiff acknowledges that he has no legal authority that imposes a duty upon the law judge to recontact a consulting physician (Doc. 17, p. 8).

At the time of his decision, the law judge obviously did not think that this 550-page record, which included treating physicians' progress notes; objective medical tests, such as multiple MRIs and x-rays; and evaluations by treating physicians, examining physicians, and reviewing non-examining physicians, was inadequate for him to make a ruling. Further, there is nothing about Dr. Pasach's evaluation that renders the record inadequate to determine

disability. Rather, the law judge merely disagreed with Dr. Pasach's opinions regarding the plaintiff's functional limitations.

> In this connection, the law judge explained (Tr. 29):

> The undersigned gives minimal weight to [Dr. Pasach's] opinion. Dr. Pasach has examined claimant only once and does not have a treating relationship. Additionally, Dr. Pasach's extreme restriction is not consistent with his own objective findings on exam. For example, Dr. Pasach found claimant's gait and movement slow but noted that claimant was able to undress, dress, mount and dismount the examining table, and walk without assistance. Dr. Pasach also noted that claimant "will not" flex ... rather than noting that claimant "cannot" flex..., which suggests an element of self-limitation. Further, Dr. Pasach also notes, "The patient does not permit sufficient handling of his extremities..." and notes that straight leg raising is "not at all restricted" in the seated position but that the claimant "will permit" only 20 to 40 degrees in the supine position – these findings should be essentially the same. Thus, again, self-limiting is suggested. Other range of motion findings of all other joints were normal. Dr. Pasach seems to have relied on claimant's subjective reports, which the undersigned is not persuaded are fully credible.

The plaintiff has not developed a challenge to the law judge's assessment of Dr. Pasach's opinion. Thus, he does not point to any purported flaws in that assessment. Therefore, in accordance with the scheduling Order (Doc. 16), which directs that discrete challenges be identified with

-8-

particularity and that such "challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards," this matter is appropriately disregarded.

The plaintiff may be suggesting that the law judge erred in thinking that Dr. Pasach's opinion relied, at least in part, on the plaintiff's subjective complaints. However, the law judge could reasonably conclude that Dr. Pasach did rely on the plaintiff's subjective complaints. Thus, as the law judge discussed (Tr. 27-29), the objective findings do not support Dr. Pasach's finding of such severe functional limitations; however, they are consistent with the plaintiff's subjective report to Dr. Pasach that he has "a walking radius no greater than 4 or 5 blocks, a standing tolerance of 15 minutes and a sitting tolerance of 25 minutes" (see Tr. 439). Significantly, the plaintiff has not disputed the law judge's conclusion that "Dr. Pasach's extreme restriction is not consistent with his own objective findings on exam" (Tr. 29). Under these circumstances, the law judge could reasonably infer that Dr. Pasach's opinion relied upon the plaintiff's subjective complaints.

Importantly, the law judge found that the plaintiff was not fully credible (id.). The plaintiff raises no challenge to that credibility determination. Accordingly, Dr. Pasach's reliance upon the plaintiff's subjective

complaints – complaints which the law judge found not fully credible – provided a permissible basis for discounting Dr. Pasach's opinion.

Moreover, the plaintiff has not challenged the law judge's other reasons for giving minimal weight to Dr. Pasach's opinion. Consequently, the plaintiff has not stated any reason to think that recontacting Dr. Pasach regarding the basis of his opinion would make any difference to the weight afforded that opinion, or to the disability determination.[2]

B. The plaintiff's second argument is that the law judge "relied on a mischaracterization of Dr. Wu's evaluation in evaluating plaintiff's residual mental functional capacity" (Doc. 17, p. 9). This contention is also unmeritorious.

Dr. Steven F. Wu, a one-time examining psychologist, pertinently opined in a Medical Source Statement of Ability to Do Work Related Activities (Mental) that the plaintiff, due to antisocial-paranoid personality, had extreme limitations in interacting appropriately with the public, supervisors, and co-workers, and in responding appropriately to work

---

[2] The plaintiff also makes the baseless argument that, absent acceptance of Dr. Pasach's opinions, there is insufficient medical evidence to determine whether he is disabled (Doc. 17, p. 7). However, by the time of his decision, the law judge had received, since the first hearing, additional medical evidence, Dr. Pasach's findings from his examination, and evidence that the plaintiff was malingering.

pressures in a usual work setting and to changes in a routine work setting (Tr. 459). Dr. Wu offered these opinions notwithstanding his finding that the plaintiff was "grossly distorting his symptoms for some type of secondary gain" and that unverified information Dr. Wu reported may not be trustworthy (Tr. 448, 455).[3]

The law judge acknowledged Dr. Wu's opinion in his decision, and found that the plaintiff had a personality disorder with antisocial features, but gave Dr. Wu's opinion that the plaintiff had severe functional limitations minimal weight (Tr. 25, 29). In this regard, the law judge explained (Tr. 29-30):

> [Dr. Eastridge,] [t]he medical expert witness at [the] supplemental hearing[,] opined that Dr. Wu based the extreme limitations on claimant's paranoid antisocial personality disorder. The medical expert testified that claimant's personality disorder does not cause claimant to be unable to function socially. The expert opined that claimant knows how to function socially but chooses not to, which is the nature of antisocial features. The medical expert testified that Dr. Wu himself found

_____

[3]In particular, Dr. Wu stated that the plaintiff's score on the Structured Inventory of Malingered Symptomology (SIMS) test was "significantly elevated above the recommended cutoff score for the identification of suspected malingering" in the areas of neurological impairment, psychosis, and amnestic disorders (Tr. 451-52). Dr. Wu also stated that the plaintiff's responses to the Minnesota Multiphasic Personality Inventory (MMPI-2) produced an invalid profile (Tr. 455).

> evidence of claimant malingering on testing and
> interpreted an invalid personality profile. The
> undersigned accepts the testimony of the
> psychological medical expert and notes that the
> medical evidence of record documents Dr. Wu's
> statement, "[t]his claimant is grossly distorting his
> symptoms for some type of secondary gain" (Exh.
> 25F, p. 8).

These are ample reasons for discounting Dr. Wu's opinions. Thus, as a one-time examining psychologist, Dr. Wu's opinions are not entitled to the same weight as a treating physician. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004). Further, this explanation would justify discounting Dr. Wu's opinions even if he had been a treating physician. See id. at 1159.

The plaintiff argues that the law judge's basis for discounting Dr. Wu's opinions is erroneous because, contrary to Dr. Eastridge's testimony, "Dr. Wu did not base his opinion on an invalid test, but instead, based his opinion on other factors and disregarded the test" (Doc. 17, p. 9). In this regard, the plaintiff cites to Dr. Wu's comment that the "personality description [of the plaintiff] ... [is] based on his interactions with the Plaintiff and his clinical experience with this type of person" (id.; Tr. 455).

However, Dr. Wu expressly stated that his opinion that the plaintiff was a malingerer was partly based on the plaintiff's invalid MMPI-2 test score (see Tr. 455)("[b]ased on the MMPI-2 and SIMS results, this claimant is grossly distorting his symptoms for some type of secondary gain"). Regardless, the pertinent issue is not the personality description per se, but Dr. Wu's determination of the plaintiff's functional limitations.

The law judge stated ample grounds for rejecting Dr. Wu's opinion that the plaintiff has severe mental functional limitations, and those grounds are not mentioned, much less refuted, by the plaintiff. In this connection, the law judge stated that he accepted the testimony of the psychological expert, Dr. Eastridge (Tr. 29), who testified that he was unable to reconcile Dr. Wu's findings of extreme functional limitations with the rest of the record. Thus, Dr. Eastridge stated that, "I don't see an indication in the record elsewhere of an extreme impairment in social functioning, and Dr. Wu lists extreme" (Tr. 535; see also Tr. 539 ("no one else has said [extreme limitations] up to that point"); Tr. 543-44). Rather, Dr. Eastridge opined that, "based on a longitudinal review of the record, [the plaintiff's limitations] would be moderate in those categories" (Tr. 544).

Furthermore, Dr. Wu seems to question the reliability of his own assessment, opining that "this claimant is grossly distorting his symptoms for some type of secondary gain" (Tr. 455), and admonishing the reader to "be cautious about taking any unverified information I am reporting here at face value" (Tr. 448). The law judge, accordingly, points to the plaintiff's malingering in discounting Dr. Wu's opinions (Tr. 29).

Moreover, the law judge accepted Dr. Eastridge's opinion that an antisocial personality would not preclude the plaintiff from functioning in the workplace (id., Tr. 536). In this connection, Dr. Eastridge testified that "[a]n anti-social personality knows how to function appropriately in a social situation and doesn't do it. And so that's a choice for him. And the difference between a normal personality and anti-social is not that the anti-social individual cannot do it, it's that they choose not to do it." (Tr. 534).

The unrefuted testimony from Dr. Eastridge provides substantial evidence for rejecting Dr. Wu's opinions regarding extreme mental functional limitations. Therefore, the plaintiff's contention that the law judge committed

reversible error in rejecting Dr. Wu's opinions as to his mental functional limitations lacks merit.[4]

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 7th day of December, 2009.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[4]For these reasons, the plaintiff's contention that Dr. Wu should be recontacted to obtain clarification as to whether his opinion was based all, in part, or not at all, on the results of the MMPI-2 and SIMS tests (Doc. 17, p. 10) is unwarranted.